**CAMDEN NATIONAL BANK**

v.

**Henry O. BONNAR.**

Supreme Judicial Court of Maine.

Nov. 21, 1979.

Harmon, Jones & Sanford by John J. Sanford, Camden (orally), for plaintiff.

Steven C. Peterson, Camden (orally), for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

A judgment in favor of the Camden National Bank was entered against defendant Bonnar in the Superior Court. The action was bottomed on the claim that a promissory note signed by Bonnar was unpaid. Trial of the action resulted in a judgment in the sum of $38,589.83 in favor of the Bank. Bonnar's appeal followed seasonably.

Two issues are raised in this appeal. First, appellant Bonnar contends that he signed the note in his representative capacity as President of Bonnar-Vawter, Inc., and he has no personal liability on the note. Second, he contends that the Bank is estopped from bringing this action against him personally until such time as it has exhausted its remedies against Bonnar-Vawter, Inc.

We deny the appeal.

I.   Obligation to Pay.

    In his findings of fact and conclusions of law, the Superior Court Justice found that defendant signed the note in a

personal rather than representative capacity. There is competent evidence to support this finding on the face of the note itself and in the testimony of the plaintiff's witness, who was both a loan officer for the Bank and a director of the defendant Corporation at the time of the signing of the note in question. Any conflicting testimony by defendant was apparently disbelieved by the trial Justice.

■ Once it is established that defendant signed in a personal and not representative capacity, his obligation to pay the note can be supported in one of three ways. First, defendant's signature can be seen as an indorsement. 11 M.R.S.A. § 3–402 states: *"Unless the instrument clearly indicates that a signature is made in some other capacity, it is an indorsement."* Defendant would, therefore, become liable to pay the note upon the Corporation's dishonor. 11 M.R.S.A. § 3–414.[1] In the instant case, plaintiff need not first present the note to the Corporation due to its present status as a bankrupt. 11 M.R.S.A. § 3–511(3)(a).[2] In addition, the language of the note itself contains a waiver of presentment and dishonor.

Second, defendant could be deemed a co-maker under the terms of the *"Comment"* to 11 M.R.S.A. § 3–402 which states:

*Thus by long established practice . . a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of the draft.*

Under 11 M.R.S.A. § 3–413(1),[3] defendant, as maker, would be required to pay the note upon its presentment to him.

Finally, defendant could be considered to be an accommodation party or surety within the meaning of 11 M.R.S.A. § 3–415. As such his signature would provide plaintiff with an alternate source of payment to the Corporation under the same terms as described above, depending on whether defendant were deemed an accommodation maker or an accommodation indorser. Defendant would then have the opportunity to recoup his loss from the Corporation.

II. Estoppel.

■ Defendant does not fare any better in his second argument. He claims that plaintiff knew, or should have known, that the Corporation was insolvent and that by plaintiff's failure to warn defendant of that fact, it should be estopped from seeking payment from defendant without first seeking recourse against the Corporation. The fallacy in the argument, however, is that defendant was not a person induced by plaintiff's representations who was excusably ignorant of the true facts. Nowhere in the record is there any evidence that plaintiff represented to defendant that the Corporation was solvent. Above and beyond that, defendant was the President of the Corporation, who by his own admission had unrestricted access to the Corporation's books. He testified that he had hired a business manager due to the poor financial

1. 11 M.R.S.A. § 3–414 provides:

*(1) Unless the indorsement otherwise specifies (as by such words as "without recourse"), every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent endorser who takes it up, even though the indorser who takes it up was not obligated to do so.*

*(2) Unless they otherwise agree, indorsers are liable to one another in the order in which they endorse which is presumed to be the order in which their signatures appear on the instrument.*

2. 11 M.R.S.A. § 3–511(3)(a) provides:

*(3) Presentment is also entirely excused when*
*(a) The maker, acceptor or drawee of any instrument except a documentary draft is dead or in insolvency proceedings instituted after the issue of the instrument.*

3. 11 M.R.S.A. § 3–413(1) provides:

*The maker or acceptor engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to Section 3–115 on incomplete instruments.*

condition of the Corporation. It is hard to believe that he had no idea of the Corporation's problems when he signed the note. The doctrine of equitable estoppel is inapplicable under these circumstances.

The entry is:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and NICHOLS, J., did not sit.